334 So.2d 535 (1976)
Robert GUIDROZ and Yvette Guidroz, Plaintiffs-Appellees,
v.
STATE FARM FIRE AND CASUALTY CO., Defendant-Appellant.
No. 10731.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.
Larry P. Boudreaux, Thibodaux, for defendant-appellant.
*536 Keith M. Whipple, Houma, for plaintiffs-appellees.
Robert B. Butler, III, Houma, for intervenor, Community Homestead Assn.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
State Farm Fire and Casualty Company (State Farm) brings this appeal from the district judge's refusal to issue a venire facias commanding the Jury Commission of the Parish of Terrebonne to furnish a jury venire for trial of the instant lawsuit. We affirm.
The relevant facts as evidenced by the record show that on June 5, 1975, plaintiffs instituted suit on an insurance contract issued by State Farm to cover damages sustained as a result of a fire in plaintiffs' home. On September 10, 1975, State Farm filed an amended answer wherein it alleged arson on the part of either or both of the plaintiffs and further requested a trial by jury as to all issues.
Pursuant to motion and order submitted by plaintiffs and filed on October 29, 1975, the matter was fixed for trial to be held on December 8, 1975.
Following receipt of notice of fixing, counsel for State Farm alleges that on or about November 13, 1975, he mailed a motion directly to the trial judge requesting that the jury bond be set and for a continuance urging, inter alia, that trial by jury could not be perfected prior to December 8, 1975.
On November 17, 1975, counsel for plaintiffs filed a motion in opposition to State Farm's request for a continuance. A copy of this motion was sent to opposing counsel. The order contained in the motion directed State Farm to show cause on November 28, 1975, why its motion for a continuance should not be disallowed and set aside. On this date (November 28, 1975), the minutes reflect that State Farm's motion for a continuance was denied and the trial date of December 8, 1975, reaffirmed. Counsel for State Farm objected since a jury had not been summoned and moved for an appeal. The trial judge directed counsel to prepare and present a formal motion for appeal with appropriate citations therefor and to submit a copy to opposing counsel.
Also, on November 28, 1975, plaintiffs filed a motion to have the court rescind its order permitting State Farm to file its amending answer (wherein trial by jury was first requested) of September 10, 1975. The basis for this motion was that the amending answer was filed for the purpose of circumventing C.C.P. Article 1732. The rule issued pursuant thereto was returnable December 2, 1975. On this later date, counsel for plaintiffs withdrew their motion, presumably with the satisfaction of knowing that State Farm's motion for a continuance had been denied, trial set for December 8, 1975, and time insufficient to secure a jury venire. However, on this date it was first discovered that State Farm's written motion (November 13, 1975) for a continuance and request to fix bond were not in the record and had not been signed by the trial court. The trial judge then signed a file copy, setting bond in the amount of $1800.00. On this same day, December 2, 1975, an order decreeing the issuance of a venire facias was presented to and denied by the trial judge.
On December 8, 1975, when the case was called for trial, State Farm presented its motion for a suspensive appeal which was granted.
State Farm contends here that the trial judge erred in ruling (1) that it was not entitled to a continuance on November 28, 1975, (2) that it was not entitled to appeal from such ruling, and (3) in denying its motion for a venire facias.
When this matter was argued before us we asked both counsel to submit briefs on *537 the point of whether a suspensive appeal lies of right from the court's refusal to grant a jury trial or to effect the procedures requisite thereto. It is evident from these briefs, and we must assume the trial judge concurred, that all parties hereto are of the opinion that an appeal from such a ruling is the appropriate remedy. We feel constrained to address ourselves to this matter because of the uncertainty which prevails and the increasing frequency in which supervisory writs are being sought relative to controversies arising from requests for jury trials, bonds, and the venire facias. That there is some doubt as to the appropriate remedy is understandable.
In Wilson Sporting Goods Company v. Alwes, 17 So.2d 382 (La.App., 1944), this court stated:
"The appeal here is one from an interlocutory judgment denying the defendant the right to have the case tried by a jury. From what was said in the prevailing opinion of the Supreme Court in refusing the writs in this case, above quoted, and from what was said in the above cited case, we conclude that the interlocutory judgment appealed from is one that would work an irreparable injury to defendant by depriving him of a trial by jury, if he is entitled to a jury trial. There would seem to be no reason to force defendant to go to the expense of trying his case before the court, while on an appeal from a judgment on the merits, he might be able to convince the appellate court that his case should have been tried by a jury and thus have the entire trial nullified and the case tried over before a jury. It would be a difficult matter to ascertain in such a situation just how the defendant could be compensated in money by reason of such a denial."
This was after writs had been applied for to the Supreme Court and after the following language is noted wherein the said court denied the same:
"Relator's petition discloses that the Court of Appeal, and not this Court, has appellate jurisdiction of this case. If, as alleged by relator, the ruling of the trial judge denying his prayer for a trial by jury will cause him irreparable injury, his remedy was to appeal to the Court of Appeal for the First Circuit, and not to invoke the supervisory jurisdiction of this Court as a substitute for the appeal. Code of Practice, Art. 566. Writs refused."
"O'Niell, C. J., is of the opinion that the relator's remedy is to urge his complaint on the appeal from the final judgment, if it goes against him."
It is apparent that this court concluded that Alwes, as a school principal, should not be put to the possible expense of multiple trials. This finding was necessary for it was an appeal from an interlocutory order. Nonetheless, the language in Alwes has been construed to mean that even in the absence of a showing of irreparable injury an appeal will lie from the refusal to grant a jury trial. City of New Orleans v. Williams, 86 So.2d 410 (4th La.App. 1956), Southern Baptist Hospital v. Williams, 89 So.2d 769 (4th La.App., 1956); and, Hernandez v. Sartain, 297 So.2d 740 (1st La.App., 1974).
In First National Bank of Commerce, New Orleans v. Miller, 328 So.2d 383 (4th La.App., 1976), the court first noticed the problem with which we are here concerned. In Miller, the defendant asked for a jury trial in response to a suit against him for a deficiency judgment. His request was denied and he obtained both writs of certiorari and an appeal. The court elected to act on the writ (since it was the first relief sought) and disposed of the issue via that procedure rather than on appeal. The second and other reason for doing so is the court had "serious doubts as to the applicability of the appeal from an interlocutory order unless irreparable injury is shown." The court specifically noted that the issue there presented *538 was "not one of timeliness but of the applicability of any of the limitations upon jury trials imposed in" C.C.P. Art. 1733.
In Scott v. Hardware Mutual Insurance, 207 So.2d 817 (La.App., 1968), timeliness was an issue. In Scott, supra, where a motion for venire facias was not filed until eight calendar days prior to trial date, this court in upholding the trial judge's decision not to order the same stated:
"This burden, of initiating the procedural mechanism for the formation of a jury, implicitly demands that application be made at a time sufficiently in advance of the date on which the matter has been set down for trial that the administrative procedures required to accomplish this function can be performed in an orderly and routine manner, without undue disruption to the other functions of the officials involved and, ideally, with ample notice and without unnecessary inconvenience to the veniremen called to serve."
On the matter of timeliness and the procedural mechanism for the perfection of one's right to a jury trial, the court in Jennings v. Coleman, 250 So.2d 845 (4th La. App.1971), held that where plaintiff had requested a jury trial and posted the security therefor prior to the cause being assigned for trial, he had satisfied all of the requirements of law notwithstanding the fact that he had done so after the delays prescribed in the rules of court for furnishing such bond had lapsed. The court cited R.S. 13:3050 which provides:
In all civil cases in which a jury is prayed for and allowed, the jury shall be composed of twelve members, nine of whom concurring may render a verdict. The party praying for the jury shall deposit with the clerk of the court twelve dollars as jury costs and shall give bond in favor of the parish for such amount as may be determined by the judge to cover the additional cost of the jury, with the right to have the same taxed as costs against the party cast in the suit. No jury shall be ordered in any civil case unless the deposit is made and the bond given.
and stated:
"There are no statutory penalties for failing to pay the jury costs or post a bond, except that the trial judge is inhibited from ordering the drawing of a jury venire to try the matter. Upon filing of the motion to set the matter for trial on its merits by a jury, the judge is empowered only to convert it to a judge trial in the event of the non-payment of jury costs or failure to post bond. It therefore follows, the payment of costs or furnishing of bond, at any time prior to the filing of the motion to set the matter for trial by jury, is timely under the statute."
Thus, the thought that an appeal is permissible as a matter of right from the refusal to obtain a trial by jury, absent a showing of irreparable injury, is the result of a misinterpretation of Alwes, supra, or of individual persuasion.
C.C.P. Art. 2083 states:
An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, and from an interlocutory judgment which may cause irreparable injury.
The Official Revision Comments under the article states that no attempt has been made to codify the jurisprudence in which interlocutory judgments have a "final" effect or may cause irreparable injury, "since the jurisprudence has been largely a case by case process, rather than the development of a basic general rule."
The myriad of circumstances involved in formulating such a rule renders the task of doing so virtually impossible. Certainly, we shall not attempt such here. One general concept prevails, however, *539 that piecemeal appeals are to be prevented. It suffices here to say that throughout the jurisprudence involving appeals from interlocutory orders one consistent factor exists, there has been a showing, allegation, and/or acknowledgement of irreparable injury. The right to such an appeal has not been taken for granted. Neither do we believe that the words "irreparable injury" are purely ornamental. If a trial judge, in the exercise of his judgment, does not think that his interlocutory order causes irreparable injury to an aggrieved litigant, he need not sign the motion for an appeal from such order. Naturally, if there be any doubt as to the effect of the order, such doubt should be resolved in favor of the party alleging injury.
What is irreparably injurious to one party may not be so to another. Every case should be decided on its own particular facts. The mere possibility that litigants may have to engage in unnecessary litigation is not in every case sufficient. This is a possibility that may arise in every instance when a jury trial is denied. This possibility arises from many other interlocutory decrees, including the granting of a jury trial, denial of peremptory exceptions, change of venue, granting of new trials, etc. When one considers the vast number of such decrees rendered by our trial judges, one finds that it is only in rare instances that error occurs, and when the remoteness of the occurrence is weighed against the lengthy delays caused by appeal, we must view the latter as the more significant in our consideration. The ultimate effect in granting an automatic appeal from such order is to establish an inflexible mechanism whereby one could force delay for no purpose other than to retard the litigation.
We do not infer that the appellant here sought an appeal for any such purpose. State Farm has frankly and forthrightly stated that it would suffer irreparable injury "because it will have been deprived of their rights to a trial by jury in this case." Yet, this appeal, nonetheless, by the time it has run the appellate process, will have delayed a trial on the merits for the greater part of one year.
Thus, we are of the opinion that the mere denial of a jury trial, without more, does not, upon its face, result in irreparable injury such that it warrants a separate appeal, thereby disrupting orderly legal process and causing a commitment to the delays inherent in normal appellate procedure. We feel appellant's appropriate remedy in these instances is either the application for supervisory writs or appeal after a final judgment.
However, in the present case, in order to expedite a decision on the matter and to avoid even further delays, we pass on the merits of the dispute.
There are three distinct steps as requisites in the perfection of a jury trial. First, demand for a jury trial must be made not later than ten days after service of the last pleading directed to such issue. C.C.P. Art. 1732. Second, a bond must be posted to insure the cost thereof. Third, the motion requesting a venire facias must be made in sufficient time in advance of the date set for trial so that administrative procedures can be performed in an orderly and routine manner. The law is silent as to specific delays for accomplishing steps two and three above. Further, these requirements of necessity must occur in the order mentioned.
State Farm's principal argument is that it could not request issuance of the venire facias until bond was set and posted. It further argues that it was led to believe that its motion for continuance and for fixing jury bond, mailed to the judge, had been filed and acted upon due to language in plaintiff's motion in opposition to said continuance. This contention is without merit. It is the obligation of the litigants to file papers with the proper official at the proper time and it is not the *540 duty of the trial judge to perform these ministerial functions. (Johnson v. State Farm Mutual Automobile Insurance Co., 241 So.2d 799 (La.App. 3rd Cir., 1970).)
Granting to State Farm such credit as it is due relative to the lost motion (November 13, 1975) for a continuance and to set the amount of the bond, we can not agree that it acted with due diligence in perfecting its right to a jury trial. The amending answer of September 10, 1975, requesting a jury trial did not contain a request that the trial judge set bond, though the latter's signature was necessary and obtained for for the filing of that pleading. The matter was ready to assign for trial on October 29, 1975, and either party, plaintiffs or defendant, was privileged to request a trial date. Throughout this six week period, State Farm knew that it had not requested that bond be fixed.
Under these circumstances, should the plaintiffs be denied the right to have the matter assigned for trial because defendant had not sought nor furnished bond? We think not. Defendant knew its intentions, plaintiffs did not. At this point the option to perfect a jury trial rested solely with State Farm. We do not feel that either party should be required to wait until the intention of the other is made known. Under these conditions, we feel that the right of the plaintiffs to an early or speedy trial is just as paramount as State Farm's right to a jury trial. To hold otherwise is to say that once there is a request for a jury trial with nothing else in the record (no request to fix the amount of the bond and no bond), the entire matter of assignment must wait. This should not be the case. Of course, the situation is different if a bond has been filed. A hearing date can not be ordered where time does not permit the orderly execution of a venire facias.
We think State Farm's argument that it could not post the bond until it knew the amount thereof ignores the fact that whereas it may not have known the amount of the bond, it certainly knew that it had not posted any bond in any amount. No effort was made to determine whether the amount of the bond had been fixed. Further, assuming that State Farm was reasonable in believing that a continuance had been granted, which conclusion could not have been justified until November 17, 1975, it again made no effort to determine the amount of the bond at that time. When the motion was argued on November 28, 1975, the amount of the bond was not sought. It was not until December 2, 1975, that State Farm actually discovered that no amount had been fixed. Faced with these facts, the trial judge had to determine whether or not appellant had acted diligently in perfecting its right to a jury trial. The court determined that it had not and declined to order the venire facias. We do not find that the trial judge erred.
Plaintiffs have requested damages for frivolous appeal. However, we note that no answer has been filed in their behalf requesting the same. La.C.C.P. Art. 2133 specifically requires an answer when damages are demanded against the appellant. Thus, we do not consider the merits of the request.
For the above and foregoing reasons, the decision of the trial court is affirmed at appellant's cost.
AFFIRMED.